McLemore, Curran & Co. *v.* E. Cannon et al.

Where an agent has fraudulently parted with the note of his principal, the original owner may require from the holder, proof that he is a holder for value.

APPEAL from the Fourth District Court of New Orleans, *Reynolds,* J.
*Wolfe & Singleton,* for plaintiffs and appellants, cited:

*Copley* v. *McFarlane,* 9 R. 183; *Harrison* v. *Poole,* 4 R. 193; *Morgan* v. *Yarborough,* 13 La. 76; *Louisiana State Bank* v. *Orleans Navigation Company,* 3 Ann. 294; Story on Notes, sec. 195.

*William H. Hunt,* for defendants, cited:

*Mathews, Finley & Co.* v. *Rutherford,* 7 Ann.; 1 Greenleaf's Ev. art. 451; 1 Starkee, 166; *Rose* v. *Blakemore,* Ry. & M. 383; L. 23, Cod. *de prab et praesumt;* C. C. 1842.

Slidell, C. J. The plaintiffs allege that they placed for sale in the hands of *S. B. Conrey,* a bill broker, two bills of exchange, one for $3000 and the other for $1119 70; that *Conrey* put them in the hands of the defendants as collateral security for a pretended debt to them, they well knowing, at the time, he was not the owner; that the bill for $3000 was subsequently sold, and the proceeds received by the defendants. They asked judgment for $3000, and that the bill for $1119 70 be restored to them. *Cannon* answered by a general denial, and also pleaded that he was the lawful owner of the bill for $1119 70, having purchased it from *Soloman.* There was judgment for both defendants, and the plaintiffs have appealed.

We will consider, first, the liability of *Cannon.*

It is proved that plaintiffs were holders of the bills, and put them into *Conrey's* hands for sale, who has failed to account to his principals. He sold the bill of $3000, and received the proceeds of sale through a broker employed by him to sell, and who testified that he had forgotten to whom he sold. This broker gave *Conrey* the proceeds in his checks on a banker, one for $1000 and one for $1790. *Solomon* got $1000 in bank notes, and the check for $1790 from *Conrey's* clerk in his absence. It does not appear that the bank notes or check ever went into *Cannon's* hands, nor that he was privy to the transaction; and although the plaintiffs have proved that there was much intimacy between *Solomon* and *Cannon;* that they occupied the same office, and had some transactions on joint account—the evidence is insufficient to establish a partnership as alleged. There is no reason, therefore, to disturb the judgment in *Cannon's* favor, so far as concerns the bill of $3000 or its proceeds.

As to the bill of $1119 70, we think the judgment in *Cannon's* favor erroneous.

The plaintiffs have proved that they held the bill; that *Conrey* was a bill broker; and that they put it into his hands to get it discounted. It is proved that his duty to his principals has been violated. He is a defaulter to them, having neither returned the bill nor accounted for its proceeds, when called upon by plaintiff, and the bill is now found in the hands of *Cannon.* There is also testimony showing that *Solomon* had said the bill was put into his hands as collateral security for an indebtedness of *Conrey* to him, the amount of which is unexplained by the defendants. It is also proved that *Conrey, Solomon* and *Cannon,* were all in the brokerage business; that there was close intimacy and constant intercourse between *Cannon* and *Solomon,* and that *Solomon* seems to have taken advantage of *Conrey's* absence, in getting the bank notes

and check from *Conrey's* clerk, upon a representation that *Conrey* had autho-
rized it, which *Conrey*, immediately upon being informed of the payment,
denied. And here it is proper to observe, that the plaintiffs have been pre-
vented from more fully disclosing the circumstances connecting *Cannon* and
*Solomon* with the matter, by the refusal of *Conrey* to testify upon the ground
that his testimony might tend to subject him to a criminal proceeding; upon
which ground, as also upon the objection of defendants on the score of interest,
the Court below refused to permit or compel him to testify.

McLEMORE, CUR-
RAN & CO.
*v.*
CANNON ET AL.

We think the above showing, on the part of the plaintiffs, was sufficient to
throw upon *Cannon* the burden of proving that he, or *Solomon*, from whom he
pleads he bought the bill, was a holder for a valid consideration. This he has
failed to do. He rests upon his naked possession, and *Solomon*, his co-defen-
dant, is equally silent. There is no doubt that in the case of a lost or stolen
bill, the original owner may require from the holder, proof that he is a holder
for value, and we do not see how, in principle, the case of one, who has been
defrauded by his agent and makes out such a showing as is here made, can be
distinguished. Were it otherwise, one who chose to collude with a bill broker,
could do it with impunity. See Story on Bills, § 198, 193; and see *Haynes* v.
*Foster*, 2 Crompton & Meeson, 239.

The most favorable aspect for the defendant, who has shown no valid con-
sideration given by himself, is that the note was put into *Solomon's* hands as
collateral security. But if that be true, *Solomon* could only hold, as against
plaintiffs, to the amount of his claim against *Conrey*, which is not proved; and
*Cannon*, who received the bill from *Solomon*, without any valuable considera-
tion shown, stands on no better footing.

With respect to the liability of *Solomon*, we are of opinion that he cannot be
held to the plaintiffs for the bank notes, the identity not being proved. But
with respect to the check for $1790, the identity is clearly established, and it
was obtained by *Solomon* from the possession of *Conrey*, who held it as plain-
tiffs' agent, without *Conrey's* consent, and against his orders, by representing
to the clerk that *Conrey* had consented.

It is therefore decreed, that the judgment of the District Court be reversed;
and that the bill of $1119 70, in the petition described, be delivered to the
plaintiffs by said *Cannon*; and that, as to the residue of the plaintiffs' claim
against said *Cannon*, there be judgment in said *Cannon's* favor.

It is further decreed, that the plaintiffs recover of the said *Solomon*, the sum
of $1790, with interest from the 19th of March, 1852, until paid, and that the
costs in both Courts be paid by the defendants *in solido*.

BUCHANAN, J. As regards the draft for $1119 70, sequestered in this case,
I desire to be understood as concurring in the opinion just read, exclusively on
the ground that the defendants, by objecting to the evidence of *Conrey*, the
broker, when called to the stand by plaintiffs, in the District Court, have suc-
ceeded in excluding testimony which would have thrown all the necessary light
upon the circumstances under which the draft in question came into the pos-
session of the defendant, *Cannon*.

As a general rule, the mere fact of a bill broker not having accounted to his
customer for the proceeds of a bill put into his hands by such customer, to be
discounted, does not, under the commercial law, throw the burden of proof
upon a person holding the bill, to show the consideration paid by him. I deem
it proper to make this observation, in order that the point decided in this case,
may not be misunderstood.